NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 09-CV-025-DLB

DAVID M. WALKER                                                                                          PLAINTIFF

VS:                              **MEMORANDUM OPINION AND ORDER**

COMMONWEALTH OF KENTUCKY, et al.                                              DEFENDANTS

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Plaintiff David M. Walker, an individual presently confined at the Beckley Federal Correctional Institution ("FCI") in Beaver, West Virginia, has filed a *pro se* civil rights Complaint pursuant to 42 U.LS.C. § 1983, and has now submitted the $350.00 District Court filing fee.

This matter is before the Court for the screening of the Complaint. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3D 601, 607-8 (6th Cir. 1997).

In the Court's screening of this *pro se* pleading, the document is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in the *pro se* litigant's complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

**CLAIMS**

Plaintiff alleges that when he was arrested in Carter County, Kentucky, and during the year afterwards, when he was kept in the Carter County Detention Center as a federal pre-trial detainee,

the Defendants violated his federal, state, and human rights.

## DEFENDANTS

As the Defendants, Plaintiff has named (1) the Commonwealth of Kentucky; (2) the Kentucky State Police ("KSP"); (3) Carter County, Kentucky; (4) the Carter County Detention Center ("CCDC"); (5) the City of Grayson's Police Department; (6) the Sheriff of Carter County; and (7) a Supervising Nurse whose first name is Deborah, now deceased.

Walker also identifies the following individual Defendants, who are all sued in their individual and official capacities: (8) Sheriff Kevin McDavid a/k/a "Moochie" McDavid; (9) Deputy Sheriff Larry Martin; (1) CCDC Jailer Randy Binion; (11) Chief Deputy Jailer william Bailey; (12) Deputy Jailers Sheila Binion, (13) Martha McDavid, (14) Denise Knipp, (15) Shanna Sullivan, (16) James Barker a/k/a Matt Barker, (17 Lorraine Savage, (18) John Estepp a/k/a Cliff Estepp, (19) Hattie Messer, (20) Crystal Winburn, (21) James Hackney a/k/a Darron Hackney, (22) Keith Hollingsworth, (23) Earle Tackett a/k/a Ed Tackett, (24) Mary Brainard, (25) John Fannin, (26) David Manning, and (27) Jon McCormick; also, (28) Nurse Maria Sargent and (29) Southern Health Partners, Inc.; and (30) KSP Troopers Jim Shelton, (31) Erik Kouns, (32) Ben Tanner, (33) Brad Wiley, and (34) Z. Thompson; plus (35) Grayson Police Officers Travis Steele and (36) Mike Fouch. Additionally, Walker claims that there are an unknown number of Unknown John and Jane doe Defendants.

## RELIEF REQUESTED

Plaintiff seeks temporary and permanent injunctive relief and damages.

## CLAIMS

Plaintiff makes multiple claims, writing as follows:

2

> . . . pursuant to 42 U.S.C. Sections 1983, 1985, 1986, 1988, the Fifth, Eighth and Fourteenth amendments to the Constitution of the United States of America . . . numerous pendent and supplemental state claims arising out of the same set of facts from which the deprivation of such constitutional rights, wrongful death, personal injury to his body as a whole but especially his head, eyes, face, back, legs, arms, testicles, chest, internal organs and other parts of his anatomy, infliction of emotional distress, mental anguish, pain, suffering, degradation, humiliation, torture, loss of enjoyment of life, medical, loss of society and support, slander and any other injury or claim that may be discovered during the discovery process for which the law hold [sic] the Defendants liable . . . .

Complaint, attached page 8(a).

## FACTUAL ALLEGATIONS

Plaintiff has submitted a 67-page Complaint, with numerous attachments. The following is a summary of the allegations in his initial submissions [record No. 2], filed March 9, 2009.

Plaintiff goes into great detail and supplies affidavits going to his arrest in Carter County, Kentucky, and later booking into the CCDC on March 11, 2007, and the first 24 hours thereafter. He alleges that he was beaten, tasered, pepper-sprayed, and maced on the street and again at the jail, until he lost consciousness more than once. He claims the event involved the Carter County, Kentucky, Sheriff's Department; the Grayson, Kentucky, Police Department; and the KSP; and he names the individuals who purportedly participated in the abuse: Tanner, Jim Shelton, Kouns, Wiley, Thompson, Steele, Fouch, Martin, and Martha McDavid.

Walker states that he was then placed in a detox cell and when his condition improved, approximately 24 hours later, he was placed in the general population of the CCDC. Walker alleges that despite his serious injuries, from which he still suffers pain, he received no medical care during his stay in the CCDC,[1] from either jail personnel or from Defendant Southern Health Partners, Inc.,

---

[1] Plaintiff admits that there is one exception to his claim of no medical care: when another inmate broke his hand in August of 2007, he received medical attention to that injury.

3

the detention center's contract provider of medical services to the inmates.

Plaintiff alleges that he remained in the CCDC for a full year, until March 26, 2008. During this time, the abuse by persons employed there purportedly continued. He states that he wrote **"NUMEROUS GRIEVANCES**, most of which went **UNANSWERED.  See attached exhibits."** He has attached these documents as group exhibit H. In the 16 grievances, the Plaintiff complains about the following:

| Date of Exhibit | Date of Actions | Subject |
| --- | --- | --- |
| 12/3/07 | 12/2/07 | Had a panic attack to which staff response was slow |
| 12/4/07 | no date given | During this "incarceration, Denise continuously made derrogatory remarks towards me" |
| 12/4/07 | 12/4/07 | uniform dirty; no fresh uniform since 11/27; "the second day ... I have been denied use of a telephone" |
| 12/4/07 | 12/3/07 | Sheila and Denise are withholding a commissary order and Sheila Binion is slandering him |
| 12/4/07 | 12/3/07 | Denied a shower on Dec. 3 and morning of Dec. 4 |
| 1/24/08 | "11/7/08 to 1/27/08" | No clean uniforms |
| 3/9/08 | 3/6/08 to 3/8/08 | Not given his legal paperwork to prepare for a court hearing on March 10; when he got it, it was in disarray |
| 3/9/08 | 3/6/08 to 3/9/08 | Denied access to law library to prepare for March 10 |
| 3/9/08 | 3/8/08 and 2 unknown dates - Requested, but was not given, a grievance form |
| 3/9/08 | 3/8/08 | Had only ½ hour visitation while other inmates had an hour "because Martha has it out for me" |
| 3/11/08 | 3/7 and 3/10/08 | Twice had no tea or other drink with meal: "It is cruel & unusual punishment" |
| 3/20/08 | 3/20/08 and 2 unknown dates - For 3rd time in 2 months, not enough lunch |

4

|         |                    | trays; but Shanna would not get him one |
|---------|--------------------|-----------------------------------------|
| 3/24/08 | 3/21/08            | Cliff Estepp ordered Walker to isolation "to cause misery in my life" |
| 3/24/08 | 3/22/08            | Placed in isolation cell with a colony of ants; told Martha but "the problem was never addressed" |
| 3/24/08 | 3/22/08<br>3/23/08 | Had to sleep on a mat on the floor one night<br>Given a wool blanket to which he is allergic; did not get the cotton one he requested until 2 a.m. on 24th |
| 3/26/08 | 3/25/08            | Only his shoes confiscated, "I felt that I was being discriminated against...mainly Sheila Binion" |

Exhibit H.

In the body of his Complaint, Walker makes additional allegations about these and other events. As to the events about which he filed grievances, he claims that Defendant Messer was the one who denied him access to the law library in March of 2008. He faults Defendant Matt Barker for the lack of clean uniforms from November 27 to December 4, 2007; but in another portion of the Complaint, he states that it was Defendant Savage's fault that there were no clean uniforms from November 5, 2007 until December 4, 2007 and from January 7, 2008 through January 24, 2008.

Plaintiff claims that Cliff Estepp is responsible for the tea shortage, with Plaintiff's having only water to drink with three of his meals, and that it was a "need" of Estepp to order Plaintiff into "isolation, a/k/a 'the hole.'" Additional Defendants allegedly cooperating with Estepp in subjecting him to unpleasant conditions in the hole were Keith Hollingsworth, Lorraine Savage, Will Bailey, John Fannan, Martha McDavid, Ed Tackett and Dave Manning.

In the year that he was at the CCDC, Plaintiff claims, he was taken to isolation on over 30 occasions. He describes the conditions there as very cold, with a vomit drain in the middle, only a mat on the floor to sleep on, and bright lights 24 hours per day. While there, he alleges, he was

repeatedly denied recreation or exercise, forced to go 3 to 5 days without a shower, and denied use of a telephone. These experiences in isolation have purportedly left him with mental anguish, nightmares, and mental disorders.

Plaintiff claims that in December of 2008, official misconduct charges were brought against Savage and Estepp. He blames Carter County, the CCDC, Southern Health Partners, Inc., and individuals Bailey, "Moochie" McDavid, and Randy Binion, for the policy and atmosphere permitting abuse of inmates and wants to hold them liable for not stopping the abuse.

## DISCUSSION

Since the Plaintiff's allegations are about events which purportedly occurred during two distinct time periods, the Court will screen them separately.

### Plaintiff's Arrest and Booking on March 11, 2007

Because Plaintiff's complaint was filed almost two years after his arrest and booking into the CCDC, Plaintiff's claims arising out of the March 11, 2007 arrest and booking are therefore, untimely and must be dismissed.

Under well-established federal law, the district courts must look to the State's law for the statute of limitations in civil rights cases. *See Wilson v. Garcia*, 471 U.S. 261 (1985). The statute of limitations for civil rights actions arising in Kentucky is one year. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)) (§ 1983 actions in Kentucky are limited by the one-year statute of limitations found in § 413.140(1)(a)); *see also University of Kentucky Bd. of Trustees v. Hayse*, 782 S.W.2d 609 (Ky. 1989), *cert. denied*, 497 U.S. 1025 (1989) and 498 U.S. 938 (1990).

In this case, all of the claims involving March 11, 2007 conduct, and the 24-hour period

6

afterwards, expired on March 11, 2008. However, Walker did not file his complaint until March 9, 2009. Therefore, all of the claims and all of the Defendants named with regard to actions occurring on March 11, 2007, are dismissed as time-barred.

### Condition of Confinement Claims arising out of Plaintiff's Stay at the CCDC from March 11, 2007 to March 26, 2008

Plaintiff's complaints about the conditions to which he was subjected at the CCDC cover an approximate one-year period. However, a number of those claims are also time-barred under Kentucky's statute of limitations. For claims filed on March 9, 2009, the alleged acts must have occurred on or after March 10, 2008. Claims based on acts taking place prior to March 10, 2008, are time-barred. Since the Plaintiff left the CCDC on March 26th, only the events occurring between March 10, 2008, and March 26, 2008 are timely.

Looking at the list of grievances above, the Court finds that six of the sixteen complaints are clearly time-barred and those claims must be dismissed. As to the remaining ten grievances, several are dated March 9th. Because the complained-of events on March 9, 2008 are so close to the March 10th cut-off, in an abundance of caution the Court will consider them also. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Accordingly, the Court narrows the scope of its screening to the remaining ten grievances and the alleged events in March of 2008.

On March 9, 2008, Plaintiff complained that he had waited for 2 days to be given the legal paperwork necessary for him to prepare for a March 10th court appearance, and when he got it on March 8th, it was re-arranged; additionally, he complained that for three days, from March 6th to March 9th, he was also denied access to the law library to prepare for court. He alleges that Defendant Messer was responsible.

However, a First Amendment claim must be based upon an actual denial of access to the

courts rather than to a law library. *See Childs v. Pellegrin*, 822 F.2d 1382, 1385 (6th Cir. 1987). There is no general constitutional right to some minimum amount of time in the prison law library. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100 (6th Cir. 1991), *cert. denied*, 503 U.S. 989 (1992). Moreover, a 2-day delay in obtaining certain undescribed legal paperwork cannot be considered a denial of access to the courts.

Further, if a pretrial detainee complains of matters regarding his confinement or prosecution, but he has had appointed defense counsel at all times during the complained-of events, he has not been denied access to the courts. *See Caton v. Maze*, 995 F.2d 881 (8th Cir.) (per curiam), *cert. denied*, 510 U.S. 967 (1993); *Johnson-el v. Schoemehl,* 878 F.2d 1043, 1052 (8th Cir. 1989). Plaintiff has described himself as a federal pre-trial detainee. Therefore, he had access to his lawyer, and does not have a First Amendment claim.

Most importantly, a plaintiff fails to state a claim of First Amendment denial of right of access to courts unless he has shown actual prejudice to his underlying litigation. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). In this case, Plaintiff does not show any such prejudice. Consequently, the Court finds that he has not set forth an access-to-the-courts claim. *Lewis v. Casey*, 518 U.S. 343 (1996).

In another grievance dated March 9, 2008, Plaintiff writes that he requested, but was not given, a grievance form. A wait for a grievance form for a day, or matter of days, simply is not actionable. It is well settled that "an inmate has no constitutional right to a grievance procedure." *Greenwood v. Hull*, 2009 WL 775472, 7 (W.D. Pa. 2009) (quoting *Johnson v. Rush*, Slip Copy, 2009 WL 237187, at * 2 (3d Cir. Feb.3, 2009) (*quoting Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)); *Rogers v. Nueces Co. Jail*, 2007 WL 4367814 (S.D. Tex. 2007) (not reported). So, the delay in

receiving grievance forms cannot support a procedural due process claim — nor an access-to-courts claim, unless there is actual prejudice, which, again, Walker does not allege. Therefore, this claim will also be dismissed.

In Plaintiff's final March 9th grievance, he has written that he had only a one-half hour visitation on the preceding day, while other inmates had a full hour. He writes that he felt that "my visit was cut short because Martha has it out for me." However, courts have ruled that the denial of visitation does not present an atypical or significant hardship beyond the ordinary incidents of prison life. *See Thomas v. Russell*, 2000 WL 32040, 1 (6th Cir. 2000) (unpublished) (citing *Sandin v. Connor*, 515 U.S. 472, 484-86 (1995); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) (the denial of visitation is ordinarily contemplated by a prison sentence); and *Bellamy v. Bradley*, 729 F.2d 416, 419-20 (6th Cir. 1984) (there is no absolute constitutional right to visitation)).

Additionally, Plaintiff claims that Martha McDavid's cutting short his visitation was "unfair" to him. To the extent that Plaintiff says this as intended to assert a substantive due process claim, it also fails. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v Brown*, 6 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1951)); *Mertik v. Blalock,* 983 F.2d 1353, 1367-68 (6th Cir. 1993)). Plaintiff's loss of 30 minutes' visitation does not meet this test.

Two of Plaintiff's grievances relate to deficiencies in providing him with food and drink during the year he was incarcerated in CCDC. He complained that on March 7th and March 10th of 2008, the institution ran out of tea and he was told to drink water at these two meals, a condition that

he describes as "cruel & unusual punishment." On March 20, 2008, and on two previous occasions, Walker further alleges there were not enough lunch trays prepared and when he told Shanna Sullivan that there were not enough for him, she would not get him one.

To comply with the Constitution, inmates must receive food which is reasonably adequate for the maintenance of normal health. *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) (citations omitted); *Cunningham v. Jones*, 567 F.2d 653, 565-60 (6th Cir. 1977). Although deliberate and unnecessary withholding of food essential to normal health can violate the Eighth Amendment, an inmate has to show that the complained-of diet was not sufficient to maintain health. *Divers v. Dept. of Corrections*, 921 F.2d 191, 194 (citing *Burgin v. Nix*, 899 F.2d 733 (8th Cir. 1990)).

Plaintiff's allegations that he missed having tea to drink at a meal on 2 occasions and went without a noon meal three times in one year's time is not unconstitutional. *See Bellamy v. Bradley*, 729 F.2d at 419 (citing *Newman v. Alabama*, 559 F.2d 283 (5th Cir. 1977), *rev'd in part sub nom. Alabama v. Pugh*, 438 U.S. 781 (1978)). Plaintiff has failed to state an Eighth Amendment claim with regard to food or drink. *See also Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).

Similarly, the confiscation of his shoes while other inmates' shoes were not confiscated, while perhaps aggravating, does not state a Constitutional claim against Sheila Binion. "To state a claim under the equal protection clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1111 (6th Cir. 1995) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). An inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *See Village of Arlington Heights v. Metropolitan*

*Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977)).

However, Plaintiff is not a member of a protected class, nor does he allege any illegal discriminatory purpose. When an equal protection challenge is brought and no fundamental right is involved, and the plaintiff does not allege that he is a member of a suspect class, as herein, then the lowest level of scrutiny applies to the defendants' actions. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1067 (6th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 445-46 (1985). "[T]his Court need only determine whether the defendants' decision was rationally related to a legitimate state interest." *Id.*

Even then, a "plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently." *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. Denied*, 114 S. Ct. 127 (1993). The plaintiff must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id.* (citing *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)).

Plaintiff has failed to assert that the persons claimed to have been afforded favorable treatment were similarly situated to him. *See e.g., Reed v. Reed*, 404 U.S. 71, 76 (1971) (equal protection requires that "all persons similarly circumstanced shall be treated alike") (quoting *F. S. Royster Guano Co. V. Virginia*, 253 U.S. 412, 415 (1920)). Plaintiff has not asserted that those who were allegedly afforded favorable treatment were convicted of the same or similar crime, hold the same or similar security classification, have exhibited the same or similar behavior, or were otherwise so similarly circumstanced that they should have been afforded similar treatment. Consequently, Plaintiff's purported equal protection discrimination claim is without a legal basis.

Because Plaintiff has failed to state cognizable federal claims, these claims must be

11

dismissed.

### Remaining Claims

In addition to the claims discussed above, Plaintiff has timely asserted a number of other claims which require pre-screening by the Court. Plaintiff's remaining three (3) grievances concern his placement in isolation at the CCDC on March 22, 2008 and the conditions therein for two days. Because these claims are brought within the statutory period and facts showing unconstitutional conditions at that time may be developed later, the Court cannot say that Plaintiff will be unable to state a constitutional claim. Accordingly, the Eighth Amendment claim with regard to the complained-of conditions in isolation at the CCDC shall go forward, focusing only on the individuals and conditions involved.

Also, to the extent that Plaintiff has asserted a civil conspiracy and claims under 42 U.S.C. §§ 1985(3), 1986, and 1988 for this time period, these claims may go forward to see if facts develop to support Walker's allegations about the remaining CCDC Defendants. So, too, will summons issue on two other counts in the Complaint. These are Plaintiff's allegations that the CCDC and its highest-ranked personnel set or delegated policy and/or failed to adequately train, supervise and discipline individual jail defendants during the relevant period.

However, certain Defendants are entitled to dismissal on the ground that their alleged conduct occurred prior to March of 2008, or the Plaintiff failed to state a cognizable claim. For instance, Defendants Denise Knipp and Sheila Binion are described as using verbal abuse on Plaintiff during 2007. Not only are those allegations time-barred, they are also not actionable. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987).

Plaintiff also brings state law claims. The first two claims are for assault and battery, and

are both based on the events occurring on March 11, 2007. Therefore, they are untimely. This is also the basis of Walker's claims for tort of outrage and the intentional infliction of emotional distress. Therefore, they, too, will be dismissed as time-barred.

As to the remaining state claims, Plaintiff is advised that when federal claims against the Defendants should be dismissed, then the pendent state claims should be dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Gregory v. Hunt, et al.*, 24 F.3d 781 (6th Cir. 1994). Therefore, Plaintiff is on notice of the possibility that should the remainder of his federal claims be dismissed, then the State claims may also be dismissed.

### Immunity Issues

Immunity shields two of the Defendants named herein. The Eleventh Amendment prohibits actions against states and state agencies under § 1983 and § 1985. *Quern v. Jordan*, 440 U.S. 332, 339-42 (1979). In *Hutsell v. Sayre*, 5 F.3d 996 (6th Cir. 1993), *cert. denied*, 114 S. Ct. 1071 (1994), the Sixth Circuit stated:

> It is well-settled that "'a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.'" *Cowan [v. University of Louisville School of Medicine]*, 900 F.2d at 940 (6th Cir. 1990) (quoting *Quern [v. Jordan]*, 440 U.S. at 337 . . . .
>
> When suit is brought against a public agency or institution, and/or its officials, "the application of the Eleventh Amendment turns on whether said agency or institution can be characterized as an arm or alter ego of the state, or whether it should be treated instead as a political subdivision of the state. *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984) (citing *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), *cert. denied*, 469 U.S. 1113 (1985). *See also Estate of Ritter v. University of Mich.*, 851 F.2d 846, 848 (6th Cir. 1988) (federal question of whether the Eleventh Amendment is applicable entails consideration of the status of the state agency under state law). The most important factor in resolving this question, however, is whether any monetary judgment would be paid out of the state treasury. *Ritter*, 851 F.2d at 850 (citation omitted).

*Id.* at 999. Since a claim for damages herein might result in a Judgment against the Commonwealth

13

of Kentucky and/or the Kentucky State Police which would be satisfied out of the Commonwealth of Kentucky's treasury, these two entities are entitled to Eleventh Amendment immunity. *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994). This also provides an alternative basis for dismissal of Defendant Troopers Shelton, Steele, Kouns, Tanner, Wiley, and Z. Thompson in their official capacities.

However, county officials are a different matter. Where a county jailer in Kentucky is the defendant in a 42 U.S.C. § 1983 action, a local governing body can be held liable if (1) the allegedly unconstitutional act is a result of an unconstitutional policy officially adopted by the governing body's officers, *Johnson v. Hardin County*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citing *Monel v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 6990-91 (1978)), or where (2) the local governing body has delegated to the jailer the responsibility of establishing policies to assure that prisoners receive proper care and the unconstitutional act has become the custom in the jail, tolerated by the jailer. *Johnson v. Hardin County*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1249-50 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990)).

Plaintiff Walker has specifically pled that certain named county Defendants formulated policy or delegated policy to individual Defendants named herein. *See* Record No. 2 at 30-32 and 48-50. Accordingly, the Court will not dismiss Carter County, the Carter County Detention Center, and the county defendants in their official capacities at this time, but will summon them to answer the allegations.

Finally, Plaintiff refers generally to having many "John Doe" and "Jane Doe" Defendants. He is hereby advised of the following provision in the Federal Rules of Civil Procedure:

> Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the

14

> plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed.R.Civ.P. 4(m) (2007). Plaintiff is hereafter on notice that if any Doe Defendants are not named and served within 120 days, then the claims against said John Doe Defendants may be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

## CONCLUSION

Accordingly, the Court being advised, **IT IS HEREBY ORDERED** as follows:

(1) The following Defendants are dismissed, *sua sponte*, with prejudice, as the claims against them are time-barred: the City of Grayson's Police Department; the Carter County Sheriff's Department; deceased Nurse Deborah Doe; Sheriff Kevin McDavid a/k/a "Moochie" McDavid; Deputy Sheriff Larry Martin; KSP Troopers Jim Shelton, Erik Kouns, Ben Tanner, Brad Wiley, Zach Thompson; Grayson Police Department Officers Travis Steele and Mike Fouch; and CCDC Defendants Denise Knipp, Crystal Wilburn, Hattie Messer, Mary Brainard, Nurse Mary Sargent, Jon McCormick, and James Hackney a/k/a Darron Hackney.

(2) The following Defendants are dismissed, *sua sponte*, with prejudice, on Eleventh Amendment immunity grounds: the Commonwealth of Kentucky and the Kentucky State Police.

(3) To the extent that the claims herein are based on actions taking place on March 11 or March 12 of 2007, the following of Plaintiff's claims are dismissed, *sua sponte*, with prejudice, as being time-barred: the excessive force and Eighth Amendment beating claim, conspiracy claims pursuant to 42 U.S.C. §§ 1985(3), 1986, 1988, and claims of assault, battery, outrage, and intentional infliction of emotional distress, under Kentucky tort law.

(4) The following claims are dismissed, *sua sponte*, without prejudice, on the ground that Plaintiff failed to state a federal claim: all of Plaintiff's equal protection/discrimination claims, his First Amendment claim of denial of access to courts, the Eighth Amendment food and drink claims, and Fifth and Fourteenth Amendment due process claims.

(5) The Clerk in the divisional office in which the case lies shall prepare and issue summons for Carter County; the Carter County Detention Center; and the following, in their official and individual capacities: CCDC Jailer Randy Binion; Chief Deputy Jailer William Bailey; Deputy Jailers Sheila Binion, Martha McDavid, Shanna Sullivan, James Barker a/k/a Matt Barker, Lorraine Savage, John Estepp a/k/a Cliff Estep, Keith Hollingsworth, Earle Tackett a/k/a Ed Tackett, John Fannin, David Manning; and Southern Health Partners, Inc.

(6) The Plaintiff shall be responsible for proper service of all of the summonses and complaints under the Federal Rules of Civil Procedure, paying particular attention to Rule 4.

(7) The Plaintiff shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(8) For every further pleading or other document he wishes to submit for consideration by the Court, the Plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. Plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each Defendant or counsel. If a District Judge or magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded

by the Court.

      (9)     The Clerk is directed to serve a copy of this Order upon the Office of General Counsel for the Kentucky Department of Corrections in Frankfort, Kentucky.

This 15th day of May, 2009.



Signed By:
*David L. Bunning*  DB
United States District Judge