UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| DAVID M. WALKER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 0:09-CV-25-DLB |
| CARTER COUNTY, KENTUCKY, et al., | ) ) ) ) | RECOMMENDED DISPOSITION |
| Defendants. | ) ) | |

*** *** *** ***

Plaintiff David M. Walker filed a complaint against Defendants seeking monetary and injunctive relief. (D.E. 2). In his complaint, Plaintiff alleges that Defendants violated his civil rights during his arrest and incarceration. (*Id.*). One of the Defendants to the action, Southern Health Partners, Inc. (SHP), has moved for summary judgment. (D.E. 76). Plaintiff has filed a response (D.E. 84), and SHP has filed a reply. (D.E. 85). Pursuant to local practice, this matter was referred to the undersigned for a recommended disposition. (D.E. 55, 80). For the reasons that follow, the Court **RECOMMENDS** that the motion for summary judgment be **GRANTED** and the claims against Southern Health Partners, Inc. be **DISMISSED with prejudice**.

## I. BACKGROUND

Plaintiff was arrested in Carter County, Kentucky, on March 11, 2007, and subsequently incarcerated at the Carter County Detention Center (CCDC). (D.E. 2 at 17,

19). He was incarcerated at CCDC from the date of his arrest on March 11, 2007, until he was transferred to the Breckenridge County Detention Center on March 26, 2008, to serve the remainder of his state sentence.[1] (D.E. 12 at 7; D.E. 76-4 at 6:3-12). He was then transferred to the Beckley Federal Correction Institution in Beaver, West Virginia, on May 2, 2008, where Plaintiff is currently serving a federal sentence. (*Id.*). Plaintiff filed this civil rights action on March 9, 2009. (D.E. 2). Most of the allegations in Plaintiff's complaint pertain to alleged abuse Plaintiff sustained at the hands of employees of the Carter County Sheriff Department, the City of Grayson Police Department, and the Kentucky State Police. The complaint also alleges that, while incarcerated at CCDC, CCDC employees treated Plaintiff improperly. Upon initial screening, many of these claims were dismissed as time barred. (*See* D.E. 12 at 6-7). Of the claims that do remain against these Defendants, none are implicated by the motion before the Court. The only matters addressed by the Court in this Recommended Disposition are the claims of deficient medical treatment and conspiracy that Plaintiff has asserted against SHP.

With respect to SHP, Plaintiff has alleged that, although he was suffering from conditions that required medical care, "[m]edical assistance was not provided . . . by . . . Southern Health Partners, Inc., with the exception of one isolated incident when

---

[1] Until his transfer to the Breckenridge County Detention Center on March 26, 2008, Plaintiff was, on occasion, temporarily housed at facilities other than CCDC while serving his state sentence. Plaintiff was housed at the Boyd County Detention Center for 10 days in October of 2007. (D.E. 76-4 at 15:8-13). He was also housed at the Fayette County Detention Center from January 24, 2008, until March 6, 2008. (*Id.* at 58:18-59:2).

Plaintiff's hand was broken between the 5th and 8th of August, 2007." (D.E. 2 at 21). In particular, Plaintiff has alleged that

> Southern Health Partners, Inc. must . . . be held accountable for the questionable actions of employee "Deborah LNU," now deceased, when she assumed control of the medical department at CCDC and illogically terminated all medications that had been distributed to inmates, including Plaintiff. Additionally, "Deborah" also required inmates to pay a $10.00 'service charge' to see her while getting diagnosed again, and treat any ailments. Plaintiff continually completed and submitted medical requests for severe back and neck pain. He was advised, "There is nothing we can do for you!" He was prescribed Naproxen to be taken twice daily. There is no question whatsoever that the medical treatment and diagnosis of Plaintiff's back and neck injuries by "Deborah" are tantamount to 'deliberate indifference' to known serious medical needs in violation of Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment while incarcerated.

(*Id.* at 32-33). Likewise, Plaintiff has alleged that SHP conspired with employees of CCDC and others to deprive Plaintiff of his civil rights. (*Id.* at 43, 65, 66-67).

In its summary judgment motion, SHP argues that these claims are barred by the applicable statute of limitations and that SHP was not responsible for providing medical care to CCDC inmates during certain relevant time periods. (D.E. 76-1 at 7). Alternatively, SHP argues that Plaintiff's claims fail because SHP is not responsible for the acts of its employees under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), that Plaintiff has failed to name an expert witness, that Plaintiff has failed to exhaust his administrative remedies, and that Plaintiff's rights were not violated. (*Id.* at 7-14).

## II. SUMMARY JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must thereafter produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. FEDERAL CLAIMS

Plaintiff's federal claims for damages and injunctive relief arise under 42 U.S.C. § 1983[2] which provides in part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must establish "both that 1) []he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)), and therefore gives rise to a claim cognizable under § 1983, *Comstock v.*

---

[2] Plaintiff has also asserted a federal claim of conspiracy against SHP pursuant to 42 U.S.C. §§ 1985 and 1986. According to Plaintiff, he believes that CCDC deputies "would inform staff of Southern Health Partners not to give inmates medication or to provide as little medical attention as they could get away with to shave costs or whatever, I am unsure." (D.E. 76-4 at 81:7-12). Nurse Debra apparently informed Plaintiff that the medical staff at CCDC "were told that they can't give us anything other than Naprosyn . . . ." (*Id.* at 81:16-20). This claim for conspiracy fails because it does not state a claim under §§ 1985 or 1986. Such claims require the alleged conspiracy be "for the purpose of depriving . . . a person . . . of the *equal protection* of the laws . . . ." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) (emphasis added) (footnote omitted). Thus, no cause of action lies under these provisions for conspiracy to deprive a plaintiff of due process rights or rights under the Eighth Amendment as alleged here. *Collins v. Bensinger*, 374 F. Supp. 273, 277 (N.D. Ill. 1974) ("This section applies only to conspiracies to deprive persons of equal protection and does not apply to conspiracies to violate due process or Eighth Amendment rights.").

*McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001). A claim for deliberate indifference under the Eighth Amendment has both objective and subjective components. *Id.* at 702. To satisfy the objective component, the plaintiff must show "that the medical need at issue is 'sufficiently serious.'" *Id.* at 702-03 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the subjective component, the plaintiff must show "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 703 (citing *Farmer*, 511 U.S. at 837).

However, SHP "cannot be held vicariously liable for the actions of its agents . . . on a respondeat superior basis." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Thus, establishing that an SHP employee deprived Plaintiff of a right secured by the Constitution is not enough for SHP to be liable under § 1983 for that deprivation. Rather, Plaintiff must also show that an SHP policy caused the deprivation of his Eighth Amendment rights. *Id.* That is, Plaintiff must "identify the policy, connect the policy to [SHP] and show that the particular injury was incurred because of the execution of that policy." *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quotation omitted).

Furthermore, Plaintiff is not entitled to relief if his claims are barred by the applicable statute of limitations. As the Court noted when screening Plaintiff's complaint, "[t]he statute of limitations for civil rights actions arising in Kentucky is one year." (D.E. 12 at 6 (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)). "Although state law establishes the statute of limitations for § 1983 actions, federal law

6

controls on the issue of when the statute of limitations begins to run." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Under federal law, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273. As District Judge Bunning noted in his opinion screening Plaintiff's complaint, "only the events occurring between March 10, 2008, and March 26, 2008 are timely." (D.E. 12 at 7).

Although the allegations in his complaint regarding deficient medical care are vague, Plaintiff, in his deposition, articulated five specific instances of conduct which give rise to his deliberate indifference claims against SHP. Each will be addressed in turn.

### A. Back Pain

First, Plaintiff contends that, around August or September of 2007 when SHP first began providing medical care for inmates at CCDC, Plaintiff filled out "sick call" requests complaining of back problems. (D.E. 76-4 at 73:1-12). According to Plaintiff, he was seen by a nurse who would perform an assessment of Plaintiff's medical condition, but the nurse would only prescribe Tylenol or Naprosyn "rather than a physician actually giving an evaluation or X-rays or MRIs being performed." (*Id.* at 73:10-12, 74:15-19). According to Plaintiff, he was told by the medical staff that "there's nothing we can do for you." (*Id.* at 75:1-3). At the time of his deposition, Plaintiff indicated that he was still suffering from back and neck pain. (*Id.* at 75:4-6).

This claim is barred by the one-year statute of limitations. Based upon Plaintiff's own deposition testimony, he first requested care for his back and neck pain in August or

7

September of 2007—approximately six to seven months prior to the limitations period cut-off date given the filing of the Complaint on March 9, 2009. (D.E. 2). It was at that time that he was allegedly told that he not going to receive any further treatment or care other than being prescribed Tylenol or Naprosyn. Plaintiff contends that he filed a "myriad of requests" regarding this back and neck pain, but that those requests went unresolved. (D.E. 84 at 9). He acknowledges, however, that none of those requests were forthcoming regarding his back and neck pain on or after March 10, 2008. (D.E. 76-4 at 80:19-81:1). According to Plaintiff, he did not seek further treatment because he realized that his "problem" was never properly diagnosed. (D.E. 84 at 9 (questioning whether anyone would "continue to seek treatment from a doctor, physician's assistant or nurse time and time again if the problem was never properly diagnosed and adequately treated.")). Thus, at some point prior to March 10, 2008, Plaintiff was aware that the medical staff at CCDC was not going to "properly" treat his neck or back pain from which he was suffering. It was at that time that Plaintiff's claim for deliberate indifference accrued. *See Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (claim accrued at or near the time medical staff refused prisoner's medical requests). Plaintiff's complaint asserting this claim was not filed until March 9, 2009. (D.E. 2). As a result, this claim is barred by the statute of limitations.

### B. Broken Hand

Second, Plaintiff complains about the medical care he received when he broke his hand at the end of August or the beginning of September of 2007. (*Id.* at 75:13-23). He states that, at that time, he was taken to the Saint Mary's Outreach Center in Grayson

where an X-ray was performed which showed that Plaintiff's hand was broken. (*Id.* at 76:9-11). He was then taken to Bellefonte Hospital where an orthopedic surgeon wrapped Plaintiff's hand in a cast and instructed Plaintiff to return in six weeks for a follow-up visit. (*Id.* at 76:12-16). Plaintiff claims that he was never sent back for a follow-up visit and that he "believes" his hand "healed back wrong." (*Id.* at 76:17-77:1).

This claim is also barred by the statute of limitations. Plaintiff states that he should have been brought back to Bellefonte Hospital for a follow-up visit in mid-October to mid-November of 2007—six weeks after he was initially seen by a doctor at the hospital. It was then that Plaintiff's claim accrued. *See Hermansen v. Schickel*, 202 F.3d 268 (table), 1999 WL 1282438, at *1 (6th Cir. 1999) (holding that a prisoner's claim that he was not returned for medical appointments "accrued on the date he was denied medical care"). However, Plaintiff did not bring this claim within one year of these dates. Thus, Plaintiff's claim related to his broken hand is time barred.

### C. Psychological Evaluation

Plaintiff also testified that in August or September of 2007 he requested to be seen by a psychiatric or mental health physician. (D.E. 76-4 at 77:23-78:7). Nurse Debra, an SHP employee, allegedly told Plaintiff that those types of evaluations were not provided at CCDC. (*Id.*). By Plaintiff's own characterization, he was allegedly denied medical care, at the latest, in September of 2007. Furthermore, to the extent Plaintiff did not realize that he was suffering from an injury at that time, he was certainly put on notice of a potential injury in January of 2008. According to Plaintiff, he was seen by a psychologist around January of 2008 while being temporarily housed at the Fayette

9

County Detention Center. (*Id.* at 78:18-23). At that time, the psychologist informed Plaintiff that he was suffering from numerous psychological disorders, such as bipolar disorder, schizophrenia, and depression. (*Id.* at 79:1-9). Here, Plaintiff became fully aware of his potential injury in January of 2008, but did not bring any claim based upon that injury within one year as required by the statute of limitations.

### D. Eye Exam

Next, Plaintiff argues that an eye exam he received while incarcerated at CCDC was deficient. (D.E. 76-4 at 83:10-20). According to Plaintiff, Nurse Debra provided an eye exam in late 2007. (*Id.*). Following the exam, Nurse Debra apparently told Plaintiff that he had 20/20 vision. (*Id.*). However, Plaintiff "felt that was inaccurate" because he could "barely see the TV." (*Id.*). Like his other claims of deliberate indifference, this claim is untimely. Although Nurse Debra administered the allegedly deficient eye examination in "late 2007," Plaintiff did not file this claim until early 2009—more than one year later.

### E. Tennis Shoes

The last allegation of improper medical care relates to Plaintiff's tennis shoes which had been prescribed to him by a doctor because Plaintiff was suffering from knee and ankle problems. (D.E. 76-4 at 79:18-80:11). According to Plaintiff, SHP personnel "disregarded their professional responsibilities" when his shoes were taken by Sheila Binion, a CCDC employee. (D.E. 84 at 12-13). However, Plaintiff simply presents no evidence of deliberate indifference on the part of SHP or its employees. To the contrary,

by Plaintiff's own admission, SHP personnel were responsive to Plaintiff's request for tennis shoes. In his deposition, Plaintiff testified to the following:

> Q. You eventually returned to Carter County Detention Center in March of 2008?
>
> A. Correct.
>
> Q. Did you have any medical complaints at that time?
>
> A. Not that I recall. I had pretty much given up hope that I was going to receive any medical treatment at Carter County. Other than maybe going through the process of getting the shoes—I have knee problems and ankle problems—that was through, I think, one of the male nurses, Justin, I believe was his name, had informed me as long as I have proper documentation from the doctor that he would see to it that I did get the shoes, and I did receive the shoes, only to be removed of them by Sheila Binion maybe within two weeks.
>
> Q. So Southern Health Partners and its employees, they didn't take your shoes from you. They actually helped you to get them?
>
> A. Correct.

(D.E. 76-4 at 79:15-80:11). To satisfy the subjective component of deliberate indifference, Plaintiff must show "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. As SHP employees provided Plaintiff with the precise tennis shoes that he requested, Plaintiff cannot make such a showing.

## IV. STATE LAW CLAIMS

In addition to the federal claims discussed above, Plaintiff has also asserted state law claims against SHP for deficient medical care and civil conspiracy. Like his federal claims, however, these claims fail as a matter of law.

### A. Deficient Medical Care

In Kentucky, "all claims related to personal injury, malpractice, negligence, or arising from disciplinary proceedings at detention facilities must be filed within one (1) year of the injury." *Smith v. Taylor*, No. 2003-CA-002615-MR, 2004 WL 1909429, at *3 n.2 (Ky. Ct. App. Aug. 27, 2004) (citing KRS 413.140). However, like its federal counterpart, a state law claim does not accrue for purposes of the statute of limitations until "the injury is, or should have been, discovered." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1990). Here, the Court has already concluded that Plaintiff was aware of the alleged deficient care he received with respect to his back pain, broken hand, psychological evaluation, and eye exam more than one year before he filed his complaint. Thus, claims based upon those alleged deficiencies are time barred. Additionally, Plaintiff's claims of deficient medical care fail because Plaintiff has not identified an expert to establish the existence of malpractice or causation. *See Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) ("Kentucky law generally requires that a plaintiff prove both the existence of malpractice and causation with expert testimony."). This failure is fatal to his claims of deficient medical care.

## B. Civil Conspiracy

Plaintiff has also asserted a state law civil conspiracy claim against SHP. A civil conspiracy under Kentucky law is "'a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.'" *James v. Wilson*, 95 S.W.3d 875, 896 (Ky. Ct. App. 2002) (quoting *Smith v. Bd. of Educ. of Ludlow, Ky.*, 264 Ky. 150, 157, 94 S.W.2d 321, 325 (1936)). It is not enough to simply show a corrupt or unlawful combination or agreement. *Id.* at 297 ("there is no such thing as a civil action for conspiracy"). Rather, "the action is for damages caused by acts committed pursuant to a formed conspiracy." *Id.* Furthermore, "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, No. 2008-CA-002389-MR, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010). Thus, if a claim for the underlying tort fails, so does the claim for civil conspiracy. *See id.* at *14 (As defendants were granted summary judgment on the plaintiff's underlying tort claim, the plaintiff's "claim of civil conspiracy [had] no tort to be based upon and [could not] survive as a matter of law.")

Here, Plaintiff's claim for civil conspiracy is based upon his underlying claims for improper medical care. (*See* D.E. 76-4 at 81:2-22) (Plaintiff stating in his deposition that his claim against SHP for conspiracy is based upon an alleged agreement to deprive Plaintiff of appropriate medication). As discussed above, those claims fail for two distinct reasons. First, those claims are barred by the applicable one-year statute of

limitations. Second, Plaintiff failed to present expert testimony on the issue of malpractice and causation. Because Plaintiff's underlying claims fail, so does his claim for civil conspiracy.

## V. CONCLUSION

Based upon the foregoing, the Court **RECOMMENDS** that the District Judge **GRANT** the motion by Defendant Southern Health Partner for summary judgment. (D.E. 76). Additionally, the Court **RECOMMENDS** that the claims against Defendant Southern Health Partners, Inc. be **DISMISSED with prejudice**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Fed. R. Civ. P. 72(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 15th day of February, 2011.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge